UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK JENKINS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:12-cv-00351 - LJO - JLT<br><br>FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY |

　　　　Frank Jenkins ("Plaintiff") asserts he is entitled to supplemental security income under Title XVI of the Social Security Act, and seeks judicial review of the decision denying benefits. For the reasons set forth below, the Court recommends the administrative decision be affirmed, and Defendant's motion for summary judgment (Doc. 18) be **GRANTED**.

**PROCEDURAL HISTORY**

　　　　Plaintiff filed an application for supplemental security income on May 6, 2009, alleging disability beginning January 1, 2004. (Doc. 14-3 at 19). The Social Security Administration denied his claim initially and upon reconsideration. *Id.* After requesting a hearing, Plaintiff testified before an administrative law judge ("ALJ") on February 3, 2011. *Id.* at 19, 32. The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on April 27, 2011. *Id.* at 19-27. Plaintiff requested review by the Appeals Council of Social Security, which

denied review of the ALJ's decision on January 6, 2012. *Id.* at 2-4. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

Plaintiff initiated this action on March 8, 2012, seeking review of the Commissioner's decision. (Doc. 1). On October 18, 2012, Plaintiff filed his opening brief, asserting the ALJ erred in rejecting the opinion of a physician, evaluating the evidence, and in rejecting the credibility of Plaintiff's subjective complaints. (Doc. 15). On November 23, 2012, Defendant filed a motion for summary judgment, asserting the ALJ's decision is supported by substantial evidence and free of legal error. (Doc. 16). Plaintiff did not file a reply brief.

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in

the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920 (a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider objective medical evidence and opinion (hearing) testimony.  20 C.F.R. §§ 416.927, 416.929.

**A.    Relevant Medical Evidence**[1]

Dr. Omar Colon performed a comprehensive neurologic evaluation on December 21, 2008. (Doc. 14-8 at 2).  Plaintiff reported numbness started in the left side of his body "five years ago with no specific cause."  *Id.*  Dr. Colon noted Plaintiff's symptoms included constant numbness, "cramps on the legs and the arms, positive weakness on the left upper extremity and lower extremity, and tingling on the left upper extremity and lower extremity."  *Id.*  He observed Plaintiff was able to walk with a normal gait, and Plaintiff estimated he could walk about 10 blocks without an assistive device. *Id.* at 2-3.  Plaintiff reported he was able to "do dishes, mopping, vacuuming, and the bed," as well as "dress and bathe himself."  *Id.* at 2.  Based upon the examination, Dr. Colon opined Plaintiff had "[n]o

---

[1] Plaintiff failed to provide "a summary of all relevant medical evidence including an explanation of the significance of clinical and laboratory findings" as instructed in the Court's order dated March 2, 2012. (Doc. 7-1 at 3). In addition, Plaintiff failed Significantly, Plaintiff was informed that an opening brief failing to comply with the requirements set forth by the Court will be stricken. *Id*. at 4. In the interest of judicial economy, the Court will not strike the opening brief. **However, counsel is reminded of the obligation to comply with the orders of the Court, and that failure to comply may result in the imposition of sanctions pursuant to Local Rule 110.**

limitations" with sitting, standing, and walking. *Id.* Further, Dr. Colon believed Plaintiff did not have postural or manipulative limitations. *Id.* at 5.

On May 11, 2009, Dr. Wong reviewed the medical record and determined Plaintiff was not fully credible because his alleged symptoms and limitations "are not supported by medical evidence." (Doc. 14-8 at 9). In addition, Dr. Wong noted Plaintiff had "[n]o current" treatment or prescriptions. *Id.* Based upon Plaintiff's examination findings, treatment history, and activities of daily living, Dr. Wong opined Plaintiff's physical impairments were "non-severe." *Id.* at 9-10. Dr. Brian Ginsburg affirmed this assessment on July 21, 2009. *Id.* at 12.

Dr. Feriba Vesali performed a neurological evaluation on March 10, 2011. (Doc. 14-9 at 61). She noted Plaintiff reported "that he had a mild stroke in 2004," resulting in tightness, tingling, and numbness in the left side of his body, but he did not have physical therapy. *Id.* Plaintiff told Dr. Vesali that he drove and went grocery shopping occasionally. *Id.* Dr. Vesali observed:

> He is alert and oriented to time, place and person. He has normal speech. He follows three-step commands with no difficulties….He did not have any difficulties to untie his shoes, take off his shoes and socks using both hands. He did not have any difficulties to get on and off the examination table.

*Id.* at 62. Plaintiff was able to count Dr. Vesali's fingers from across the room, with each eye. *Id.* Plaintiff walked "with a normal gait" and did not require an assistive device for ambulation. *Id.* Also, Dr. Vesali determined Plaintiff's motor strength was "5/5 in bilateral upper and lower extremities including grip strength." *Id.* at 64. Dr. Vesali found Plaintiff had "increased light touch and pinprick sensation in the left upper and lower extremities and borderline negative tandem gait." *Id.* She noted Plaintiff had "decreased visual acuity bilaterally." *Id.* Based upon the examination, Dr. Vesali concluded Plaintiff "should be able to walk, stand, and sit with no limitations," and "lift/carry with no limitations." *Id.* However, Dr. Vesali indicated Plaintiff could lift and carry "11 to 20 pounds" frequently and "21 to 50 pounds" occasionally. *Id.* at 65. Dr. Vesali opined Plaintiff had "limitation on work that requires normal visual acuity on both eyes." *Id.* at 64.

Dr. Paul Martin conducted a psychological disability evaluation on March 14, 2011. (Doc. 14-9 at 72). Plaintiff reported "some decreased vision on his left side," "mild pain with cramping," and "some decline in concentration and memory skills." *Id.* Plaintiff "denied having a learning disability"

and "denied being placed in special education." *Id.* at 73. Further, Plaintiff told Dr. Martin that he had a high school education, and "worked as a barber for many years." *Id.* He informed Dr. Martin that he was able to drive, use public transportation, and perform activities of daily living, including preparation of simple meals and light household chores. *Id.*

Dr. Martin administered several tests, including Wechsler Adult Intelligence Scale- 4th edition (WAIS-IV), Wechsler Memory Scale- 3rd edition (WMS-III), Bender Visual Motor Gestalt Test, 2nd edition (BG-II), Trail Making Test (TMT) and Minnesota Multiphasic Personality Inventory, 2nd edition (MMPI-2). (Doc. 14-9 at 72). He observed Plaintiff's "attention and concentration was adequate" and "insight and judgment appeared to be fair." *Id.* at 73. Dr. Martin found Plaintiff's "[m]emory for recently learned information was poor" because Plaintiff "recited 0 out of 3 words after a brief delay." *Id.* On the WAIS-IV, Plaintiff had a verbal IQ of 72, performance IQ of 73, and full-scale IQ score of 67, which Dr. Martin opined "possibly reflect[ed] some mile [sic] decline from premorbid ability." *Id.* at 74.

Dr. Martin explained, "Test results suggest that the claimant is functioning in the low to average to borderline range with fairly significant difficulties on new learning and memory." (Doc. 14-9 at 75). Dr. Martin found Plaintiff "had mild difficulty understanding, remembering, and carrying out simple instructions," as well as "mild difficulty maintaining attention and concentration for the duration of the evaluation." *Id.* According to Dr. Martin, Plaintiff had "moderate difficulty with detailed and complex instructions," and "moderate difficulty with pace and persistence." *Id.* Further, Dr. Martin opined Plaintiff had "mild difficulty" enduring stress, and was "likely to have mild difficulty adapting to changes in routine work-related settings." *Id.*

**B.      Hearing Testimony**

Plaintiff testified at the hearing before the ALJ on February 3, 2011. (Doc. 14-3 at 32). He reported that he had a high school education, and completed about a year of college. *Id.* at 37. Plaintiff said he was able to read the newspaper and do simple math. *Id.* Plaintiff stated he was able to dress and bathe himself without help; do chores including cooking, washing dishes, mopping, sweeping, dusting, and laundry; and go grocery shopping. *Id.* at 38-39. He estimated he watched television an average of three or four hours each day. *Id.* at 39.

According to Plaintiff, he suffered from numbness and constant "tingling" pain in his hands and legs, as well as vision problems in his left eye. (Doc. 14-3 at 37-38, 41). On a scale of one to ten, with ten being the worst, Plaintiff stated his pain was "[a]bout a eight" on the left side of his body. *Id.* at 41. He reported that he stopped taking medications for his pain because it did not help. *Id.* at 40.

He estimated that he was able to walk or stand "45 minutes to an hour" at a time. (Doc. 14-3 at 40. Likewise, Plaintiff believed he could sit "[a]bout an hour." *Id.* He estimated he could lift "[m]aybe 50 pounds." *Id.* at 41. Plaintiff stated he had to rest during the day, which required him to "sit down and . . . take a break." *Id.* at 43-44.

Further, Plaintiff said he had problems with concentration, and explained "it's hard for me to remember where I'm going sometimes, you know, if I have to go somewhere and be somewhere at a certain time." (Doc. 14-3 at 45-46). He said he was able to focus "maybe an hour and a half, two hours." *Id.* at 46. However, Plaintiff said he was not sure if he could concentrate on an object, such as if he had to pick bad apples off a belt, because of his eyes. *Id.* at 45.

### C. The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity from his application date of May 6, 2009. (Doc. 14-3 at 21). Second, the ALJ found Plaintiff's cognitive disorder, not otherwise specified, was a severe impairment. *Id.* Next, the ALJ found Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a listing, including Listing 12.02. *Id.* at 23-24.

The ALJ determined Plaintiff had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels," but was "limited to work involving only simple repetitive tasks." (Doc. 14-3 at 24). With this RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 26. Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 27.

## DISCUSSION AND ANALYSIS

### A. The ALJ set forth legally sufficient reasons giving less weight to the opinion of Dr. Vesali.

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-

examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Also, an examining physician's opinion is given more weight than the opinion of a non-examining physician. 20 C.F.R. § 404.1527(d)(2).

An ALJ may reject the controverted opinion of a physician with "specific and legitimate" reasons, supported by substantial evidence in the record. *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the court when there is "more than one rational interpretation of the evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). The opinion of an examining physician may be rejected whether or not the opinion is contradicted by another. *Magallanes*, 881 F.2d at 751.

Plaintiff contends the ALJ set forth insufficient reasons to reject the opinion of Dr. Vesali, an examining physician. (Doc. 15 at 5). Plaintiff argues, "[T]he ALJ rejected Dr. Vesali's opinion because it was inconsistent with his findings. That reason was not sufficient because Dr. Vesali found there was increased pinprick and sensation on the left, and borderline negative tandem gait, both key findings associated with stroke history." *Id.* (citations omitted). On the other hand, Defendant contends, "The ALJ here thoroughly considered the medical opinion evidence and he provided good reasons for his weighting of the evidence." (Doc. 18 at 10).

1.     The ALJ's reasoning

In the discussion of the medical evidence, the ALJ noted "some weight" was given to the opinion of Dr. Vesali. (Doc. 14-3 at 22). The ALJ found the opinion of Dr. Vesali was internally inconsistent and "not entirely consistent with the medical evidence of record." *Id.* These may constitute specific, legitimate reasons for giving less weight to the opinion of Dr. Vesali.

7

The Ninth Circuit explained an opinion may be rejected where there was incongruity between a physician's assessment and her records. *See, e.g., Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (explaining internal inconsistencies within a physician's report supports the decision to discount the opinion of a physician); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ permissibly rejected treating physician's opinion containing contradictory observations); *Gonzales v. Astrue*, 2012 U.S. Dist. LEXIS 45595 (E.D. Cal. Mar. 30, 2012) (ALJ did not err rejecting an opinion containing inconsistent statements). Here, the ALJ noted Dr. Vesali found Plaintiff "retained full strength in all extremities," and she "initially stated that the claimant's impairment does not restrict his ability to lift and carry." (Doc. 14-3 at 22). However, Dr. Vesali later opined Plaintiff could "lift and carry 20 pounds occasionally and 10 frequently." *Id.* Also, the ALJ noted Dr. Vesali opined Plaintiff was "limited to work requiring normal visual acuity in both eyes," but she determined Plaintiff was "able to count fingers across the room." *Id.* Thus, the internal inconsistencies identified by the ALJ were specific, legitimate reasons for giving less weight to the opinion of Dr. Vesali.

Further, an ALJ may reject a medical opinion when it is "unsupported by the record as a whole." *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003). As noted by the ALJ, Dr. Colon and Dr. Vesali found Plaintiff "had full strength in all extremities," although he had decreased sensation in his left side. (Doc. 14-3 at 21-22). Given Plaintiff's muscle and grip strength, the ALJ determined "the medical evidence of record does not support a limitation in lifting or carrying." *Id.* at 22. Therefore, the medical record supports the ALJ's decision to give less weight to the opinion of Dr. Vesali. *See Burkhart v. Bowen,* 856 F.2d 1335, 1339-40 (9th Cir.1988) (ALJ properly rejected an opinion unsupported by medical findings and test reports).

    2.    Substantial evidence supports the determination

The Commissioner explained the term "substantial evidence" "describes a quality of evidence ... intended to indicate that the evidence that is inconsistent with the opinion *need not* prove by a preponderance that the opinion is wrong." 1996 SSR 4 LEXIS 9 at *8.[2] Rather, "[i]t need only be

---

[2] Social Security Rulings are issued by the Commissioner to clarify regulations and policies. Though they do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.* Significantly, the opinion of an examining physician may be substantial evidence in support of the ALJ's decision when the opinion is based upon independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). As noted by the ALJ, Dr. Colon tested Plaintiff's muscle and grip strength, and opined Plaintiff had "no limitations on his ability to perform basic work activities." (Doc. 14-3 at 22) (citing Doc. 14-8 at 2-5). Accordingly, the opinion of Dr. Colon is substantial evidence.

Moreover, Dr. Wong and Dr. Ginsburg opined Plaintiff's physical impairments were "non-severe." (Doc. 14-8 at 9-10, 12). Because their opinions are consistent with Dr. Colon's opinion that Plaintiff did not have physical limitations, their opinions are substantial evidence in support of the ALJ's determination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record").

Although the evidence may be "susceptible to more than one rational interpretation," the ALJ set forth specific, legitimate reasons to give less weight to the opinion of Dr. Vesali, and the decision is supported by substantial evidence in the record. Therefore, this Court must uphold the evaluation of the medical evidence. *See Orn*, 495 F.3d at 630; *see also Matney*, 981 F.2d at 1019.

**B.     The ALJ did not err in her evaluation of the Listings at step three.**

The Listings set forth by the Commissioner "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citation omitted, emphasis in original). At step three of the sequential evaluation, the claimant bears the burden of demonstrating his impairments equal a listed impairment. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n. 5 (1987); 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step." *Bowen*, 482 U.S.

at 141; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The ALJ determined Plaintiff's physical impairments did not meet or medically equal the criteria of Listing 12.02.[3] (Doc. 14-3 at 23). However, Plaintiff argues he satisfies the requirements of Listing 12.05(c), which was not evaluated by the ALJ. (Doc. 15 at 4-5).

Plaintiff asserts the ALJ erred in failing to consider Listing 12.05 because Dr. Martin found he had a full scale IQ score of 67, which was not discussed by the ALJ. (Doc. 15 at 3). Listing 12.05 governs mental retardation, and requires a plaintiff to demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period…" 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 12.05. Thus, the evidence must "demonstrate[] or support[] onset of the impairment before age 22." *Id.* The Supreme Court explained, "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. at 530 (emphasis in original).

Here, evidence in the record does not support an inference that Plaintiff suffers mental retardation, or that he did so prior to the age of 22. To the contrary, Plaintiff reported, "I was not disabled prior to age 22." (Doc. 14-6 at 2). Plaintiff "denied having a learning disability" and "denied being placed in special education." (Doc. 14-9 at 73). Although Dr. Martin found Plaintiff had a full scale IQ of 67, he opined the intelligence test results "may reflect mild decline in cognitive functioning." *Id.* at 74-75. Based upon the examination and test results, Dr. Martin opined Plaintiff "does not present with symptoms of a severe or persistent mental health disorder." *Id.* at 75. Further, Dr. Martin concluded Plaintiff had a *mild* cognitive disorder, not otherwise specified. *Id.* Thus, the opinion of Dr. Martin does not support a finding that Plaintiff has "significantly subaverage general intellectual functioning" as required to satisfy Listing 12.05.

---

[3] Plaintiff asserts he "possibly" satisfied Listing 12.02 (A)(7). (Doc. 15 at 4). Significantly, even if "paragraph A" is satisfied, Listing 12.02 requires satisfaction of the "paragraph B" criteria as well. 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 12.02 ("The required level of severity . . . is met when the requirements in *both* A *and* B are satisfied…") (emphasis added). The ALJ determined Plaintiff failed to satisfy "paragraph B" (Doc. 14-3 at 22), and Plaintiff does not challenge this determination. The Ninth Circuit instructs that the Court will "review only issues which are argued specifically and distinctly." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Accordingly, any argument regarding an error in the ALJ's discussion of Listing 12.02 is **WAIVED**.

Moreover, the Ninth Circuit concluded it was not an error for an ALJ to fail to discuss Listing 12.05 when the evidence did not support a claimant's alleged mental retardation. *Brooks v. Barnhart*, 167 Fed. App'x 598, 599-600 (9th Cir. 2006). In *Brooks*, the plaintiff had a verbal IQ of 59, performance IQ of 75, and a full-scale IQ of 65. *Id.* at 600. The Court found, "the record also establishes that the IQ scores are likely invalid because testing was invalid and because the claimant's 'cognitions were not grossly impaired' at the clinical interview." *Id.* Further, the Court noted the Regulations "require a narrative report that comment[s] on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.'" *Id.* (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(6)(a)). However, the doctor did not offer such an assessment or find the claimant had 'significantly subaverage' functioning. *Id.* The facts now before the Court are similar to those in *Brooks*, and the ALJ did not err in not discussing Listing 12.05 at step three of the sequential evaluation.

### C.     The ALJ's credibility determination is supported by clear and convincing reasons.[4]

In determining credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility by setting forth clear and convincing reasons for rejecting his subjective complaints. *Id.* at 1036.

An adverse credibility determination must be based on clear and convincing evidence where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ may not discredit a claimant's testimony as to the severity of

---

[4] Although Plaintiff asserts the ALJ erred in assessing the credibility of his subjective complaints, Plaintiff failed to provide a summary of his hearing testimony. Rather, Plaintiff asserted the relevant testimony would be "discussed in the connection with the arguments." (Doc. 15 at 2). This is insufficient to comply with the terms of the Court's order to provide "a summary of the relevant testimony at the administrative hearing." (*See* Doc. 7-1 at 3). In future, the Court will strike briefs which, as here, blithely disregard the Court's orders and counsel's duty to provide a summary of the relevant testimony.

symptoms only because it is unsupported by objective medical evidence. *See Bunnell*, 947 F.2d at 347-48. In addition, the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

Factors that may be considered include, but are not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas*, 278 F.3d at 958-59. Here, the ALJ determined: "the claimant's medically determinable impairments can reasonably be expected to cause the alleged symptoms." (Doc. 14-3 at 25). However, the ALJ opined his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible . . ." *Id*. Supporting these findings, the ALJ considered Plaintiff's activities of daily living and objective medical evidence.

*Activities of daily living*

When a claimant spends the day engaged in activities that are transferable to a work setting, a finding of this fact may be sufficient to discredit a claimant's allegations of a disabling impairment." *Morgan*, 169 F.3d at 600 (citing *Fair*, 885 F.2d at 603). For example, a claimant's ability to cook, clean, do laundry and manage finances may be sufficient to support an adverse finding find of credibility. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (the claimant's activities "suggest she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend. She is able to manage her own finances..."). Likewise, an ALJ may conclude "the severity of . . . limitations were exaggerated" when a claimant exercises, gardens, and participates in community activities. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

Here, the ALJ considered Plaintiff's daily activities—which included caring for his personal needs, and performing "chores around the house, such as sweeping mopping, washing the dishes, and doing the laundry." (Doc. 14-3 at 23, 25). The ALJ noted Plaintiff reported he had the ability to go grocery shopping, prepare his own meals, and drive. *Id.* Further, the ALJ noted Plaintiff said he "can

concentrate on a television program for an hour and a half to two hours." *Id.* at 25. The ALJ concluded Plaintiff's abilities to perform these tasks indicate he "remains able to meet the[] basic mental demands of work." *Id.* at 27. As the Ninth Circuit explained, "Although the evidence of [the plaintiff's] daily activities may also admit of an interpretation more favorable to [him], the ALJ's interpretation was rational, and [the court] 'must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'" *Burch*, 400 F.3d at 680 (quoting *Magallanes*, 881 F.2d at 750). Accordingly, the ALJ's determination that Plaintiff's daily activities are consistent with the ability to do work supports the adverse credibility determination.

*Objective medical evidence*

Generally, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan*, 169 F.3d at 600. The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 96-7p, 1996 SSR LEXIS 4, at *2-3 (the ALJ "must consider the entire case record, including the objective medical evidence" in determining credibility, but statements "may not be disregarded solely because they are not substantiated by objective medical evidence").

Here, the ALJ did not base her decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff. Thus, the objective medical evidence was a relevant factor in determining Plaintiff's credibility. However, in citing to the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to make a simple statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, the ALJ "must state which pain testimony is not credible and what evidence suggests the claimants are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ noted Plaintiff reported hip pain, but both Dr. Colon and Dr. Vesali "noted that he had a full range of motion in that joint with full strength in his left leg." (Doc. 14-3 at 22). In addition, the ALJ noted Plaintiff testified he had difficulty with concentration and focus, but "neither Dr. Vesali nor Dr. Colon noted any concentration deficits, and Dr. Vesali indicated that he completed a three- step command without difficulty." *Id.* at 26. Therefore, the ALJ carried her burden to identify "what evidence undermines the testimony," and the objective medical evidence supports the ALJ's credibility determination. *See Holohan v* 246 F.3d at 1208.

## FINDINGS AND RECOMMENDATIONS

The ALJ's set forth specific, legitimate reasons to give less weight to the opinion of Dr. Vesali, which were supported by substantial evidence in the record. The ALJ's consideration of the Listings at step three of the sequential evaluation was proper, and Plaintiff has not demonstrated a mental impairment satisfying the requirements of Listing 12.02. In addition, the ALJ's consideration of Plaintiff's daily activities and the objective medical record support the adverse credibility determination. Therefore, the ALJ's determination that Plaintiff is not disabled must be upheld by the Court, because the ALJ applied the proper legal standards and her findings are supported by substantial evidence. *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY RECOMMENDED**:

1. The decision of the Commissioner of Social Security be **AFFIRMED**; and
2. Defendant's motion for summary judgment be **GRANTED**; and
3. The Clerk of Court be DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Frank Jenkins.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the Objections shall be filed and served within fourteen days of the date of service of the Objections. The parties are

advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **January 4, 2013**              /s/ Jennifer L. Thurston
                                                                  UNITED STATES MAGISTRATE JUDGE